THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ONLINE MARKETING SOLUTIONS, INC. ) | |
| and XUEFENG WANG ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION NO. 1:12-cv-12232 |
| v. ) | |
| ) | |
| JANET NAPOLITANO, as Secretary of the ) | |
| Department Homeland Security; ALEJANDRO ) | COMPLAINT |
| MAYORKAS, as Director of the U.S. ) | |
| Citizenship & Immigration Services; ) | |
| GREGORY A. RICHARDSON, Director, Texas ) | |
| Service Center, United State Citizenship and ) | |
| Services                         ` ) | |
| ) | |
| Defendants, ) | |

## COMPLAINT FOR REVIEW AND RELIEF UNDER THE ADMINISTRATIVE PROCEDURES ACT

NOW comes Online Marketing Solutions, Inc, (hereinafter referred to as OMS) and Xuefeng Wang, (hereinafter referred to as Wang) Plaintiffs in the above-captioned matter, and hereby state as follows:

1.      This action is brought against the Defendants for review of final agency actions under the Administrative Procedures Act.

### PARTIES

2.      The Plaintiff, Online Marketing Solutions, Inc., is a corporation, incorporated under the laws of the Commonwealth of Massachusetts with its principal place of business located in Lowell, Massachusetts.  The Plaintiff, Xuefeng Wang, is a resident of Arlington, Massachusetts and a citizen of the People's Republic of China.  Plaintiff OMS is the current employer of Plaintiff Wang

1

and is the petitioner of an employment based immigrant visa for Plaintiff Wang.

3.      The Defendant Janet Napolitano is the Secretary of the Department Homeland Security, and this action is brought against her in her official capacity.  She is generally charged with enforcement of the Immigration and Nationality Act, and is further authorized to delegate such powers and authority to subordinate employees of the Department of Homeland Security and the Department of Justice. 8 USC §1103(a).  The U.S. Citizenship & Immigration Services is an agency within the Department of Homeland Security to whom the authority has in part been delegated, and is subject to the Secretary of the Department Homeland Security's supervision.

4.      The Defendant Alejandro Mayorkas, Director, is an official of the U.S. Citizenship & Immigration Services (USCIS) generally charged with supervisory authority over all operations of the USCIS.

5.      The Defendant, Gregory A. Richardson, is the Director of the Texas Service Center, United States Citizenship and Immigration Services,  is an official of the U.S. Citizenship & Immigration Services (USCIS) charged with supervisory authority over all operations of the USCIS within the Center he directs, and is the decision maker in the case at hand.

JURISDICTION

6.      Jurisdiction is conferred upon this Court by 28 U.S.C. §1331,  5 U.S.C. §701, et seq., and 28 U.S.C. 2201.

VENUE

7.      Venue lies with this Court pursuant to 28 USC §1391(e), in that this is an action against officers and agencies of the United States in their official capacities, brought in the District where the Plaintiffs reside.

CAUSE OF ACTION

8.      Plaintiff OMS applied for an individual labor certification from the United States Department of Labor on September 17, 2010 for the position of Computer System Analyst at a proffered wage of $104,936.00, with such position to be filled by Plaintiff Wang.  The United States Department of Labor approved the labor certification on or about November 4, 2010.

9.      On or about November 22, 2010, Plaintiff OMS applied to Defendants for an employment based immigrant visa for Plaintiff  Wang.  Plaintiff OMS filed its I-140 visa petition for 'a member of the professions holding an advance degree' under the statutory provisions of 8 U.S.C. §1153(b)(2), §203(b), Immigration and Nationality Act and 8 U.S.C. §1154(a)(1)(F), §204(a)(1)(F), Immigration and Nationality Act.  Defendants assigned to this filing number SRC1190054416.

10.      On July 30, 2011,  Defendants denied Plaintiff OMS's visa petition for Plaintiff Wang. Attached as Exhibit 1 is the denial.  Defendants erroneously found that Plaintiff OMS had not demonstrated that it had the ability to pay Plaintiff Wang the proffered wage of $104,936.00 for the position at issue.

11.      On August 19, 2011, Plaintiff OMS filed with Defendants a Motion to Reopen the now denied visa petition case.  Plaintiff OMS included with its Motion to Reopen evidence that was not available with its original filing, specifically its federal tax return for 2010, W-2 forms for Plaintiff Wang, pay stubs for Plaintiff Wang, un-audited balance sheet and profit/loss statements and bank statements.  Defendants assigned to this filing number SRC1190284734.

12.      On November 6, 2012, Defendants denied Plaintiff OMS's visa petition for Plaintiff Wang.  Attached as Exhibit 2 is the denial.  Defendants found that, while Plaintiffs met

the requirements for the motion to reopen,  Plaintiff OMS had not demonstrated that it had the ability to pay Plaintiff Wang the proffered wage of  $104,936.00.

13.     During these administrative proceedings, Plaintiff OMS supplied Defendants with the following evidence, as well as other items, regarding its ability to pay, to wit:

A.     For the entire calendar year 2010, Plaintiff OMS employed Plaintiff Wang as computer systems analyst and paid him $100,000.00 over the year for his work.

B.     The current net assets of Plaintiff OMS at the end of 2010 were $75,047.  (Lines 1 through 6, current assets,  minus lines 16 through 18, current liabilities, Schedule  L, 2010 US income tax return for Plaintiff OMS.

C.     For the portion of calendar year 2011 that had passed by the time Plaintiff OMS filed its Motion to Reopen, Plaintiff OMS had employed Plaintiff Wang as computer systems analyst and had paid him $66,307.70 through August 17, 2011 which, when annualized, totaled $108,615.40.

D.     A letter from Thomas J. Caveney, Jr.—an owner of 40% of the capital stock of Plaintiff OMS--- stating he would forfeit approximately $4,936 of his pay to ensure any shortfall of salary for 2010.

14.     In adjudicating ability to pay, Defendants have established through practice and adjudication that where the petitioner is paying the foreign worker a portion of the proffered wage, Defendants will then determine whether the petitioner has the ability to pay the difference between the wages actually paid and the proffered wage.  Attached as Exhibit 3 is an excerpt from the  Business Product Teleconference minutes of July 27, 2004 titled "NSC Addresses Employment Based Issues", Nebraska Service Center, USCIS which makes this point:

4

"Under the Yates Memo of 5/4/04...when a beneficiary is already being paid a portion of the prevailing wage, can the Service Center confirm that it is only necessary to show taxable income greater than the difference between the wage paid and the prevailing wage?

That's correct. If the petitioner has paid the beneficiary an amount less than the proffered wage, it must be shown that the petitioner has the ability to pay the difference between the wages actually paid and the proffered wage."

15.     Neither of the two decisions of the Defendants that are the subject of this Complaint state or find that Plaintiff OMS employed Plaintiff Wang in 2010 or 2011. Neither of the two decision state or find that Plaintiff OMS paid any salary, let alone $100,000 in 2010 and $66,308.70 through August 17, 2011, to Plaintiff Wang. Neither of the two decisions indicate that Plaintiff OMS needed to show its ability to pay the difference between the wages actually paid and the proffered wage.

16.     In adjudicating ability to pay, Defendants have established through practice and adjudication that a petitioner's net income or net current assets may be considered in establishing the petitioner's ability to pay the difference between the wages actually paid and the proffered wage. Attached as Exhibit 4 is a published decision Office of Administrative Appeals, United States Citizenship and Immigration Services, U.S. Department of Homeland Security, Washington D.C., dated August 2, 2010, File LIN 08-018-51539, which makes this point.

"As an alternate means of determining the petitioner's ability to pay the proffered wage, USCIS may review the petitioner's net current assets. Net current assets are the difference between the petitioner's current assets and current liabilities. A corporation's

year-end current assets are shown on Schedule L, lines 1 through 6.  Its year-end current

liabilities are shown on lines 16 through 18.  If the total of the corporation's end-of-year

net current assets and the wages paid to the beneficiary (if any) are equal to or greater

than the proffered wage, the petitioner is expected to be able to pay the proffered wage

using those net assets."

17.     Defendants' decision of July 30, 2011 contains a finding that Plaintiff OMS had

net assets at the end of 2009 of $51,302.   Defendants' decision of November 6, 2012 contains

a finding that Plaintiff OMS had net assets at the end of 2010 of $75,047.   Neither decision

mentions or adds Plaintiff Wang's actual wage of $100,000 in 2010 to the net asset figures to

establish that, in fact, Plaintiff OMS had the ability to pay in 2010 the proffered wage of

$104,936.00.

18.     Neither decision considers the offer of Thomas J. Caveney, Jr.—an owner of 40%

of the capital stock of Plaintiff OMS--- stating he would forfeit approximately $4,936 of his pay

to ensure any shortfall of salary for 2010, an obvious reference to the difference between the

proffered wage of $104,936.00 and the actual wage paid in 2010 of $100,000.00.

19.     Defendants' failure to consider Plaintiff OMS's employment of Plaintiff Wang

and payment to Plaintiff Wang of $100.000.00 in 2010 and $66,307.70 through August 17, 2011

which, when annualized, totaled $108,615.40 is arbitrary, capricious and contrary to law.

20.     Defendants' failure to follow its established practice of considering a petitioner's

net current assets to pay the difference between the wages actually paid to the foreign employee

and the proffered wage is arbitrary, capricious and contrary to law.

21.     Defendants' failure to consider the offer of Thomas J. Caveney, Jr. that he would

forfeit approximately $4,936 of his pay to ensure any shortfall of salary for 2010 is arbitrary, capricious and contrary to law.

22.     The July 30, 2011 decision  of the Defendants denying Plaintiff OMS visa petition for Plaintiff Wang is unsupported by substantial evidence and unwarranted by the facts.

23.     The November 6, 2012 decision of the Defendants denying Plaintiff OMS's visa petition for Plaintiff Wang is unsupported by substantial evidence and unwarranted by the facts.

24.     The decision of July 30, 2011 is the final agency action with respect to Plaintiff OMS's visa petition for Plaintiff Wang.  The decision of November 6, 2012 is the final agency action with respect to Plaintiff OMS's Motion to Reopen its visa petition case for Plaintiff Wang.

25.     Plaintiff OMS seeks to secure the employment of Plaintiff Wang through the immigrant visa processes allowed by 8 U.S.C. §1153(b)(2), §203(b), Immigration and Nationality Act and suffers a legal injury through Defendants' erroneous denial of its application for the immigrant visa.

26.     Plaintiff Wang seeks to immigrate to the United States through an employment based immigrant  visa secured by Plaintiff OMS and to work for Plaintiff OMS under the terms and conditions of the U.S. Department of Labor's approved labor certification.  Plaintiff Wang suffers a legal injury through Defendants' erroneous denial of the application of Plaintiff OMS for an immigrant visa for Plaintiff Wang.

Prayer

27.     WHEREFORE,  Plaintiffs  prays for the following relief:

A.     Review the agency record on Plaintiff OMS's I-140 visa petition for Plaintiff Wang and on Plaintiff OMS's Motion to Reopen and determine that the decisions to deny the

7

visa petition and the Motion to Reopen are not in accordance with law, are arbitrary or capricious, or were unsupported by substantial evidence, or were unwarranted by the facts.

B.      Direct Defendants to approve Plaintiff OMS's I-140 visa petition for Plaintiff Wang forthwith.

C.      Provide such other relief as may be just under the circumstances.

> Online Marketing Solutions, Inc.
> Xuefeng Wang,  Plaintiffs
>
> /s/ Vard R. Johnson
>
> By_____
> Vard R. Johnson, # 660137 BBO
> Suite 601, 185 Devonshire Street
> Boston, Massachusetts 02110
> 1-617-557-1711
> 1-617-523-6324 Fax
> vardinboston@verizon.net
>         Their Attorney

U.S. Department of Homeland Security
P.O. Box 852841
Mesquite, Texas 75185-2841



**U.S. Citizenship
and Immigration
Services**

TO:

DATE: July 30, 2011

Marc Taylor, Esq.
Marc Taylor, Esq. PC
224 W. 4th Street, Ste. 200
New York, NY 10014

Notice: Form I-140

File Number: SRC1190054416
A Number: A201082098

Dear Sir/ Madam:

Attached herewith is the decision of U.S. Citizenship and Immigration Services (USCIS) regarding Form I-140.

Sincerely,

Angela K Barrows, Acting Director
Texas Service Center

Officer# XM 1156

Enclosure

Exhibit 1.

U.S. Department of Homeland Security
P.O. Box 852841
Mesquite, Texas 75185-2841



**U.S. Citizenship
and Immigration
Services**

TO:
**Online Marketing Solutions**
**Attn: Peter Campbell, COO**
**128 Warren Street**
**Lowell, MA 01852**

**DATE: July 30, 2011**

**Petition: Form I-140**

| | |
|---|---|
| **File** | SRC1190054416 |
| **Number:** | /A201082098 |
| **Beneficiary:** | |

**Xuefeng Wang**

## DECISION

Your Form I-140, Immigrant Petition For Alien Worker, has been denied for the following reason(s):

See Attachment

If you desire to appeal this decision, you may do so. Your notice of appeal must be filed within 30 days of the date of this notice (33 days if this notice was mailed to you). Your appeal must be filed on Form I-290B. A fee of $630.00 is required, payable to U. S. Citizenship and Immigration Services with a check or money order from a bank or other institution located in the United States.

In support of your appeal, you may submit a brief or other written statement for consideration by the reviewing authority. You may, if necessary, request additional time to submit a brief. Any brief, written statement, or other evidence not filed with Form I-290B, or any request for additional time for the submission of a brief or other material must be sent directly to:

U. S. Citizenship and Immigration Services
Administrative Appeals Office
Washington, D.C. 20529-2090

Any request for additional time for the submission of a brief or other statement must be made directly to the Administrative Appeals Office, and must be accompanied by a written explanation for the need for additional time. An extension of time to file the appeal may not be granted. **The notice of appeal (Form I-290B) may not be filed directly with the Administrative Appeals Office. Instead, the appeal must be filed at the address indicated in the filing instructions for Form I-290B available online at http://www.USCIS.gov under "… all other unfavorable decisions made by a USCIS Service Center."** You also have the opportunity to file a motion to reopen or reconsider as specified in 8 C.F.R. Section 103.5(a). A motion to reopen or reconsider a petition must be filed on Form I-290B with the proper fee, within thirty (30) days of this decision (33 days if this notice was mailed to you). This decision is without prejudice to any other benefits that you are seeking or likely to seek.

Sincerely,

Angela K Barrows, Acting Director
Texas Service Center

Officer# XM 1156
cc:     Marc Taylor, Esq.
        Marc Taylor, Esq. PC
        224 W. 4th Street, Ste. 200
        New York, NY 10014
Enclosure: Form I-290B

02/23/2011

SRC1190054416

## ATTACHMENT

The record indicates that you filed the petition for the beneficiary to perform services as computer system analyst under Section 203(b)(2) of the Immigration and Nationality Act on November 22, 2010. Upon consideration, it is ordered that your immigrant petition for an alien worker be denied for the following reasons.

In determining the petitioner's ability to pay the proffered wage during a given period, USCIS will first examine whether the petitioner employed and paid the beneficiary during that period. The petitioner submitted a 2009 Federal tax return, a copy of An Automatic Extension to File Certain Business Income Tax, Information, and Other Returns for year 2010, W2s for year 2009 and 2010, payroll registers, a pay stub, and a letter from the Thomas J. Caveney, Jr. stating he would forfeit approximately $4,936 of his pay to ensure the shortfall of salary.

If the petitioner does not establish that it employed and paid the beneficiary, USCIS will examine the net income figure reflected on the petitioner's federal income tax return, without consideration of depreciation or other expense. Reliance on federal income tax returns as a basis for determining a petitioner's ability to pay the proffered wage is well established by judicial precedent. *Elatos Restaurant Corp v. Sava.* 632 F. Supp. 1049, 1054 (S.D.N.Y. 1986) (*citing Tongatuapu Woodcraft Hawaii, Ltd. v. Feldman,* 736 F. 2d 1305 (9th Cir. 1984); *see also Chi-Feng Chang v. Thornburgh,* 719 F. Supp. 532 (N.D. Texas 1989); *K.C.P. Food Co, Inc v. Sava,* 623 F. Supp. 1080 (S.D.N.Y. 1985); *Ubeda v. Palmer,* 539 F. Supp. 647 (N.D. Ill. 1982, *aff'd* 703 F. 2d 571 (7th Cir. 1983).

In *K.C.P. Food Co., Inc v. Sava,* the court held the legacy Immigration and Naturalization Service (now United States Citizenship and Immigration Services) had properly relied on the petitioner's net income figure, as stated on the petitioner's corporate income tax returns, rather than the petitioner's gross income. 623 F. Supp. at 1084. The court specifically rejected the argument that the Service (now USCIS) should have considered income before expenses were paid rather than net income. Finally, there is no precedent that would allow the petitioner to "add back to net cash the depreciation expense charged for the year." *Chi-Feng Chang v. Thornburgh,* F. Supp. at 537; *see also Elatos Restaurant Corp.v Sava,* 632 F. Supp. at 1054.

The petitioner's tax returns reflect the following:

[TAXABLE INCOME BEFORE NET OPERATING LOSS OR ORDINARY INCOME]
2009   ($697,085)
2010   $N/A

The tax returns do not show that the petitioner has a net income equal to or greater than the proffered wage. If the net income the petitioner demonstrates it had available during a period, if any, added to the wages paid to the beneficiary during the period, if any, do not equal the amount of the proffered wage or more, USCIS will review the petitioner's assets. The petitioner's total assets include depreciable assets that the petitioner uses in its business. Those depreciable assets will not be converted to cash during the ordinary course of business and will not, therefore, become funds available to pay the proffered wage. Further, the petitioner's total assets must be balanced by the petitioner's liabilities. Otherwise, they cannot properly be considered in the determination of the petitioner's ability to pay the proffered wage. Rather, USCIS will consider net current assets as an alternative method of demonstrating the ability to pay the proffered wage.

Net current assets are the difference between the petitioner's current assets and current liabilities. A corporation's year-end current assets are shown on Schedule L, lines 1 through 6. Its year-end current liabilities are shown on lines 16 though 18. If a corporation's end-of-year net current assets are equal to or

SRC1190054416

greater than the proffered wage, the petitioner is expected to be able to pay the proffered wage out of those net current assets.

Schedule L of the petitioner's tax returns reflect the following:

|  | 2009 | 2010 |
|---|---|---|
| Current Assets | $51,302 | $N/A |
| Current Liabilities | $0 | $N/A |
| Net Current Assets | $51,302 | $N/A |

The petitioner's net current assets are not equal to or greater than the proffered wage. Therefore, the petitioner has not established his ability to pay as of the priority date.

In visa petition proceedings, the petitioner bears the burden of establishing eligibility for the benefits sought. See *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966).

Based on the evidence on hand, and the above regulations, it cannot be determined that the petitioner has met the required burden of proof. Therefore, this petition seeking to classify the beneficiary as a second preference alien cannot be approved and is hereby denied.

SRC1190284734

U.S. Department of Homeland Security
P.O. Box 852841
Mesquite, Texas  75185-2841

 **U.S. Citizenship
and Immigration
Services**

TO:
**Online Marketing Solutions, Inc.**
**Attn: Keith Caveney**
**128 Warren Street #D**
**Lowell, MA 01852**

**DATE: November 6, 2012**

**Petition: Form I-140**

**File
Number:**   SRC1190054416/
A201082098
SRC1190284734

**Beneficiary:**

**Xuefeng Wang**

### DECISION

Your Form I-140, Immigrant Petition for Alien Worker, has been denied for the following reason(s):
See Attachment

You may appeal this decision to the Administrative Appeals Office. In the alternative, you may file a motion to reopen or reconsider with this Service Center. Your appeal or motion to reopen or reconsider must be filed on Form I-290B, Notice of Appeal or Motion within 30 days of the date of this notice (33 days if this notice is received by mail). You must mail your Form I-290B, along with the appropriate filing fee and other documentation in support of the appeal or motion, to the correct address. Do **not** mail your completed Form I-290B directly to the Administrative Appeals Office or to this Service Center.

To obtain the filing locations, the required filing fee amount, and more information about the Form I-290B filing requirements, please refer to the USCIS website at **http://www.uscis.gov/forms**. You may also contact the National Customer Service Center (NCSC) at 800-375-5283.

This decision does not prevent you from filing any petition or application in the future.

Sincerely,

Gregory A. Richardson, Director
Texas Service Center

Officer# XM 1156

Enclosures: Form I-290B and corresponding instructions

*Exhibit 2*

1

SRC1190284734

## ATTACHMENT

**DISCUSSION:** Reference is made to Immigrant Petition for Alien Worker (FormI-140) filed by Online Marketing Solutions (the petitioner) on behalf of Xuefeng Wang (the beneficiary). On July 30, 2011, Form I-140 was denied by U.S. Citizenship and Immigration Services (USCIS) because the petitioner failed to establish it had the ability to pay the proffered wage.

On August 19, 2011, the petitioner filed a motion to reopen. The petitioner indicates that it has submitted new evidence to establish that it has the ability to pay the proffered wage of $104,936 to the beneficiary.

The petitioner has submitted a statement about whether or not the validity of the unfavorable decision has been or is the subject of any judicial proceeding; thus, the requirement for filing a motion to reopen and reconsider has been met per 8 C.F.R. § 103.5(a)(1)(iii)(C). In addition, the petitioner has stated new facts and the reasons for reconsideration, which was supported by evidence. The petitioner has established that the decision was incorrect based on the evidence of record when Form I-140 was initially denied. Therefore, the requirements of 8 C.F.R. §§ 103.5(a)(2), and 103.5(a)(3) have been satisfied. The petitioner has now submitted federal tax return for year 2010, W-2s for the beneficiary, paystubs for the beneficiary, un-audited balance sheet and profit/loss statement, and bank statements..

While the petitioner has established that the requirements for the motion have been met, the petitioner has not established eligibility for the requested benefit. The proffered wage listed on the Form ETA 9089 and on the Form I-140 is $104,936. The petitioner must establish it has the ability to pay this proffered wage as of the priority date and continues to have such ability.

8 C.F.R. § 204.5(g)(2) states:

> Any petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence. Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements. In a case where the prospective United States employer employs 100 or more workers, the director may accept a statement from a financial officer of the organization which establishes the prospective employer's ability to pay the proffered wage. In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by the Service.

In determining the petitioner's ability to pay the proffered wage during a given period, USCIS will first examine whether the petitioner employed and paid the beneficiary during that period. The petitioner submitted a 2010 federal tax return, paystubs for the beneficiary, W-2s, bank statements, and un-audit balance sheet.

If the petitioner does not establish that it employed and paid the beneficiary the proffered wage, USCIS will examine the net income figure reflected on the petitioner's federal income tax return, without consideration of depreciation or other expense. Reliance on federal income tax returns as a basis for determining a petitioner's ability to pay the proffered wage is well established by judicial precedent. *Elatos Restaurant Corp v. Sava,* 632 F. Supp. 1049, 1054 (S.D.N.Y. 1986) (*citing Tongatapu Woodcraft Hawaii, Ltd. v. Feldman,* 736 F. 2d 1305 (9th Cir. 1984); *see also Chi-Feng Chang v. Thornburgh,* 719 F. Supp. 532 (N.D. Texas 1989); *K.C.P. Food Co, Inc v. Sava,* 623 F. Supp. 1080 (S.D.N.Y. 1985); *Ubeda v. Palmer,* 539 F. Supp. 647 (N.D. Ill. 1982, *aff'd* 703 F. 2d 571 (7th Cir. 1983).

In *K.C.P. Food Co., Inc v. Sava,* the court held the legacy Immigration and Naturalization Service (now United States Citizenship and Immigration Services) had properly relied on the petitioner's net income figure,

2

SRC1190284734

as stated on the petitioner's corporate income tax returns, rather than the petitioner's gross income. 623 F. Supp. at 1084.  The court specifically rejected the argument that the Service (now USCIS) should have considered income before expenses were paid rather than net income. Finally, there is no precedent that would allow the petitioner to "add back to net cash the depreciation expense charged for the year." *Chi-Feng Chang v. Thornburgh*, F. Supp. at 537; *see also Elatos Restaurant Corp.v Sava*, 632 F. Supp. at 1054.

The petitioner's tax returns reflect the following:

[TAXABLE INCOME BEFORE NET OPERATING LOSS OR ORDINARY INCOME]

   2010  ($188,631)

The tax returns do not show that the petitioner has a net income equal to or greater than the proffered wage. If the net income the petitioner demonstrates it had available during a period, if any, added to the wages paid to the beneficiary during the period, if any, do not equal the amount of the proffered wage or more, USCIS will review the petitioner's assets.  The petitioner's total assets include depreciable assets that the petitioner uses in its business.  Those depreciable assets will not be converted to cash during the ordinary course of business and will not, therefore, become funds available to pay the proffered wage.  Further, the petitioner's total assets must be balanced by the petitioner's liabilities.  Otherwise, they cannot properly be considered in the determination of the petitioner's ability to pay the proffered wage.  Rather, USCIS will consider net current assets as an alternative method of demonstrating the ability to pay the proffered wage.

Net current assets are the difference between the petitioner's current assets and current liabilities.  A corporation's year-end current assets are shown on Schedule L, lines 1 through 6.  Its year-end current liabilities are shown on lines 16 through 18.  If a corporation's end-of-year net current assets are equal to or greater than the proffered wage, the petitioner is expected to be able to pay the proffered wage out of those net current assets.

Schedule L of the petitioner's tax returns reflect the following:

|  | 2010 |
|---|---|
| Current Assets | $75,047 |
| Current Liabilities | $0 |
| Net Current Assets | $75,047 |

The petitioner's net current assets are not equal to or greater than the proffered wage.  Therefore, the petitioner has not established his ability to pay as of the priority date.

An un-audited financial report and bank statements are not among the three types of evidence, enumerated in 8 C.F.R. § 204.5(g)(2), required to illustrate a petitioner's ability to pay a proffered wage.  While this regulation allows additional material in appropriate cases, the petitioner has not demonstrated why the documentation specified at 8 C.F.R. § 204.5(g)(2) is inapplicable or unavailable.  The bank statements present a portrayal of the petitioner's assets.  However, there is no information regarding the petitioner's liabilities for this time period.  The bank statements alone do not establish the petitioner's ability to pay the proffered wage.

**ORDER:**  It is ordered that the original decision denying Form I-140 remain undisturbed and remain denied.



AILA InfoNet
American Immigration Lawyers Association

## NSC Addresses Employment-Based Issues (7/27/04)

Cite as "AILA InfoNet Doc. No. 04082471 (posted Aug. 24, 2004)"

Business Product Teleconference
July 27, 2004

*WHAT'S NEW*

*A few personnel changes have had ripple effects in the Center:*

*- Upon Terry Way's retirement, Greg Christian was selected as Acting Director, Neil Jacobson was selected as Acting Deputy Director and Raquel Trevizo was selected as Acting Assistant Director in the Unified Services Line.*

*- Ruth Stearns was selected as Backlog Reduction Program Coordinator, a newly-established position. Mark Rohrs was selected as Acting Assistant Director for Residence Product Line and Kevin Bloom was selected as Acting Supervisory Center Adjudications Officer for Asylee I-485s.*

*- Roy Dykes has been detailed outside the Center; Tracey Coleman was selected as Acting Supervisory Congressional Liaison Specialist.*

*- John brown has been detailed to headquarters; Mike Lebow was selected as Acting Assistant Director for Business Product Line. We will not select an acting supervisor in Mike's place; rather his officers have been absorbed into other teams.*

*Just a reminder: when filing I-129 petitions, please provide the beneficiary's country of birth as well as his/her country of citizenship.*

*We have almost achieved the interim goal of getting the processing time of Reentry Permits down to a year. We anticipate getting them down to 11 months by the end of the fiscal year and nine months by the end of the calendar year.*

*We have established "NSC Flash," an e-mail service to provide quick notice of information (changes, etc) to customer groups. NSC Flash #1 announced the new passport-photo requirement. Additional news flashes are forthcoming shortly.*

1. The 6/30/04 announcement about pink-sheets being provided for NIW physician adjustment applicants to use in submitting the responses of evidence of service is a welcome change. Thank you. Follow-up questions from this:

a. In practice thus far, the Service has inconsistently issued notifications of due dates for

*Exhibit 3*

4/16/2009

*New or Subsequent Family or Employment-Based Immigrant Petitions," HQ 70/6.1.3, dated May 9, 2000, authored by Michael A. Pearson.*

b. Is there any way to substitute a new I-140 with an already pending I-140/485 application?

*Please refer to the HQ memorandum referenced to above.*

c. Is there any way to file a new I-485 with an already filed I-140 petition? (where for example, it is anticipated the pending I-485 will eventually be denied)

*If the initial Form I-140 petition filed with the I-485 is eventually approved, the I-485 may be transferred to a subsequent I-140 petition, if approved, so long as there is a visa available at the point of transfer and the applicant is otherwise eligible (reference HQ memorandum, entitled "Transferring Section 245 Adjustment Applications to New or Subsequent Family or Employment-Based Immigrant Petitions", HQ 70/6.1.3, dated May 9, 2000, authored by Michael A. Pearson).*

5. Under the Yates Memo of 5/4/04, (see attachment 3) when a beneficiary is already being paid a portion of the prevailing wage, can the Service Center confirm that it is only necessary to show taxable income greater than the difference between the wage paid and the prevailing wage?

*That's correct. If the petitioner has paid the beneficiary an amount less than the proffered wage, it must be shown that the petitioner has the ability to pay the difference between the wages actually paid and the proffered wage.*

6. We have been getting some RFEs where evidence of ability to pay is requested for tax years prior to the priority date. Can the Service Center confirm submission of financial information from the priority date onward is sufficient unless one is trying to prove a Sonegawa or similar exception?

*That's correct; we should not seek ability-to-pay evidence unless a Sonegawa or similar exception is being sought. The regulation at 8 CFR Sec 204.5 (g)(2) requires that any petition filed by or for an employment-based immigrant, which requires an offer of employment, must be accompanied by evidence that the prospective employer has the ability to pay the proffered wage. Generally, the petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains LPR status.*

7. In showing permanent employment in cases involving Outstanding Researchers, there seems to be some inconsistency in the standard required. Is it necessary to include the entire contract or is a summary of offer of employment sufficient? Does a written offer have to be made directly to the employee, or will a letter from the university confirming the existence of such an offer be sufficient? Must the information concerning the offer come from the university administration or is it acceptable to come from a department head or supervisor of the researcher.

*The regulation at 8 CFR Sec 204.5(i) (3)(iii) (B) requires that the evidence of a job offer must be in the form of a letter from a United States university or institution of higher learning offering the alien a permanent research position in the alien's academic field. A letter to the CIS describing*

**identifying data deleted to prevent clearly unwarranted invasion of personal privacy**

**PUBLIC COPY**

**U.S. Department of Homeland Security**
U. S. Citizenship and Immigration Services
*Office of Administrative Appeals* MS 2090
Washington, DC 20529-2090



**U.S. Citizenship and Immigration Services**



**AUG 0 2 2010**

FILE: ▆▆▆▆▆    Office: NEBRASKA SERVICE CENTER    Date:
LIN 08 018 51539

IN RE:    Petitioner:
Beneficiary: ▆▆▆▆▆



PETITION:  Immigrant Petition for Alien Worker as a Skilled Worker or Professional pursuant to Section 203(b)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1153(b)(3)

ON BEHALF OF PETITIONER:

INSTRUCTIONS:

Enclosed please find the decision of the Administrative Appeals Office in your case. All of the documents related to this matter have been returned to the office that originally decided your case. Please be advised that any further inquiry that you might have concerning your case must be made to that office.

If you believe the law was inappropriately applied by us in reaching our decision, or you have additional information that you wish to have considered, you may file a motion to reconsider or a motion to reopen. The specific requirements for filing such a request can be found at 8 C.F.R. § 103.5. All motions must be submitted to the office that originally decided your case by filing a Form I-290B, Notice of Appeal or Motion, with a fee of $585. Please be aware that 8 C.F.R. § 103.5(a)(1)(i) requires that any motion must be filed within 30 days of the decision that the motion seeks to reconsider or reopen.

Thank you,

Perry Rhew
Chief, Administrative Appeals Office

*Exhibit 4*

**www.uscis.gov**

███████

Page 2

**DISCUSSION:** The preference visa petition was denied by the Director, Nebraska Service Center, and is now before the Administrative Appeals Office (AAO) on appeal. The appeal will be sustained.

The petitioner is a construction company. It seeks to employ the beneficiary permanently in the United States as a glass block bricklayer. As required by statute, the petition is accompanied by a Form ETA-750, Application for Alien Employment Certification, approved by the United States Department of Labor (DOL). The director determined that the petitioner had not established that it had the continuing ability to pay the beneficiary the proffered wage beginning on the 2001 priority date of the visa petition, and during tax years 2002, 2003, 2005, and 2006. The director denied the petition accordingly.

The record shows that the appeal is properly filed, timely and makes a specific allegation of error in law or fact. The procedural history in this case is documented by the record and incorporated into the decision. Further elaboration of the procedural history will be made only as necessary.

As set forth in the director's May 6, 2009 denial, the single issue in this case is whether or not the petitioner has the ability to pay the proffered wage as of the priority date and continuing until the beneficiary obtains lawful permanent residence.

Section 203(b)(3)(A)(i) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1153(b)(3)(A)(i), provides for the granting of preference classification to qualified immigrants who are capable, at the time of petitioning for classification under this paragraph, of performing skilled labor (requiring at least two years training or experience), not of a temporary nature, for which qualified workers are not available in the United States.

The regulation at 8 C.F.R. § 204.5(g)(2) states in pertinent part:

> *Ability of prospective employer to pay wage.* Any petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence. Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements.

The petitioner must demonstrate the continuing ability to pay the proffered wage beginning on the priority date, which is the date the Form ETA-750, Application for Alien Employment Certification, was accepted for processing by any office within the employment system of the DOL. *See* 8 C.F.R. § 204.5(d). The petitioner must also demonstrate that, on the priority date, the beneficiary had the qualifications stated on its Form ETA 750, Application for Alien Employment Certification, as certified by the DOL and submitted with the instant petition. *Matter of Wing's Tea House*, 16 I&N Dec. 158 (Act. Reg. Comm. 1977).

■■■■■■■

Page 3

Here, the Form ETA 750 was accepted on April 18, 2001. The proffered wage as stated on the Form ETA 750 is $19.02 per hour ($39,561.60 per year). The Form ETA-750 states that the position requires two years of experience in the proffered position.

The AAO conducts appellate review on a *de novo* basis. *See Soltane v. DOJ*, 381 F.3d 143, 145 (3d Cir. 2004). The AAO considers all pertinent evidence in the record, including new evidence properly submitted upon appeal.[1]

On appeal, the petitioner submits its Forms 1120S, U.S. Income Tax Return for an S Corporation, for tax years 2001 to 2007.[2]

The AAO notes that the director requested the petitioner's federal tax returns for tax years 2001 to 2007, as well as additional evidence such as the beneficiary's W-2 Forms to establish the petitioner's ability to pay the proffered wage. The purpose of the request for evidence is to elicit further information that clarifies whether eligibility for the benefit sought has been established, as of the time the petition is filed. *See* 8 C.F.R. §§ 103.2(b)(8) and (12). The petitioner submitted the beneficiary's W-2 Forms for tax year 2001 to 2008 on March 30, 2009, and requested an extension of time for the tax returns due to tax season and the petitioner's accountant's lack of time to access the tax records. The failure to submit requested evidence that precludes a material line of inquiry can be grounds for denying the petition. 8 C.F.R. § 103.2(b)(14). However, since the petitioner submitted part of the requested evidence in response to the director's RFE, and provided an acceptable explanation for the delay in submitting the rest of the requested evidence, the AAO will accept the petitioner's evidence offered for the first time on appeal. *See Matter of Soriano*, 19 I&N Dec. 764 (BIA 1988); *Matter of Obaigbena*, 19 I&N Dec. 533 (BIA 1988).

The evidence in the record of proceeding shows that the petitioner is structured as an S corporation. On the petition, the petitioner claimed to have been established in 1986, to have $700,000 in gross annual income and to have between eleven to fourteen workers. According to the tax returns in the record, the petitioner's fiscal year is based on a calendar year. On the Form ETA-750B, signed by the beneficiary on April 18, 2001, the beneficiary claimed to have worked for the petitioner since August 1997.

The petitioner must establish that its job offer to the beneficiary is a realistic one. Because the filing of an ETA 750 labor certification application establishes a priority date for any immigrant petition later based on the ETA 750, the petitioner must establish that the job offer was realistic as of the priority date and that the offer remained realistic for each year thereafter, until the beneficiary obtains lawful permanent residence. The petitioner's ability to pay the proffered wage is an essential element in

---

[1] The submission of additional evidence on appeal is allowed by the instructions to the Form I-290B, which are incorporated into the regulations by the regulation at 8 C.F.R. § 103.2(a)(1). The record in the instant case provides no reason to preclude consideration of any of the documents newly submitted on appeal. *See Matter of Soriano*, 19 I&N Dec. 764 (BIA 1988).

[2] The petitioner, in response to the director's RFE dated February 17, 2009, submitted the beneficiary's W2-Form, Wage and Tax Statement, for tax years 2001 to 2008.



Page 4

evaluating whether a job offer is realistic. *See Matter of Great Wall*, 16 I&N Dec. 142 (Acting Reg. Comm. 1977); *see also* 8 C.F.R. § 204.5(g)(2). In evaluating whether a job offer is realistic, United States Citizenship and Immigration Services (USCIS) requires the petitioner to demonstrate financial resources sufficient to pay the beneficiary's proffered wages, although the totality of the circumstances affecting the petitioning business will be considered if the evidence warrants such consideration. *See Matter of Sonegawa*, 12 I&N Dec. 612 (Reg. Comm. 1967).

On appeal, counsel requests that USCIS prorate the proffered wage for the portion of the year that occurred after the priority date. We will not, however, consider 12 months of income towards an ability to pay a lesser period of the proffered wage any more than we would consider 24 months of income towards paying the annual proffered wage. While USCIS will prorate the proffered wage if the record contains evidence of net income or payment of the beneficiary's wages specifically covering the portion of the year that occurred after the priority date (and only that period), such as monthly income statements or pay stubs, the petitioner has not submitted such evidence.

In determining the petitioner's ability to pay the proffered wage during a given period, USCIS will first examine whether the petitioner employed and paid the beneficiary during that period. If the petitioner establishes by documentary evidence that it employed the beneficiary at a salary equal to or greater than the proffered wage, the evidence will be considered *prima facie* proof of the petitioner's ability to pay the proffered wage. In the instant case, the petitioner submitted the beneficiary's W2 Forms for tax years 2001 to 2008 that established the petitioner paid the beneficiary the following wages:  $27,768.48 in 2001; $35,870.65 in 2002; $38,823.50 in 2003; $45,074. 83 in 2004; $29,371.56 in 2005; $10,181.25 in 2006; $56,785.27 in 2007; and $61,546.93 in 2008. Thus, the petitioner established it employed and paid the beneficiary wages greater than the proffered wage of $39,561.6 in tax years 2004, 2007, and 2008. However, during tax years 2001, 2002, 2003, 2005 and 2006, the petitioner has not established that it employed and paid the beneficiary the full proffered wage. The petitioner thus has to establish its ability to pay the difference between the beneficiary's actual wages during these years, and the proffered wage.[3]

If the petitioner does not establish that it employed and paid the beneficiary an amount at least equal to the proffered wage during that period, USCIS will next examine the net income figure reflected on the petitioner's federal income tax return, without consideration of depreciation or other expenses. *River Street Donuts, LLC v. Napolitano*, 558 F.3d 111 (1st Cir. 2009). Reliance on federal income tax returns as a basis for determining a petitioner's ability to pay the proffered wage is well established by judicial precedent. *Elatos Restaurant Corp. v. Sava*, 632 F. Supp. 1049, 1054 (S.D.N.Y. 1986) (*citing Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305 (9th Cir. 1984)); *see also Chi-Feng Chang v. Thornburgh*, 719 F. Supp. 532 (N.D. Texas 1989); *K.C.P. Food Co., Inc. v. Sava*, 623 F. Supp. 1080 (S.D.N.Y. 1985); *Ubeda v. Palmer*, 539 F. Supp. 647 (N.D. Ill. 1982), *aff'd*, 703 F.2d 571 (7th Cir. 1983). Reliance on the petitioner's gross receipts and wage expense is misplaced. Showing that the petitioner's gross receipts exceeded the proffered wage is

---

[3] The differences between the beneficiary's actual wages and the proffered wage are as follows: $11,793.12 in 2001; $3,690.95 in 2002; $738.10 in 2003; $10,190.04 in 2005, and $29,380.35 in 2006.



Page 5

insufficient.  Similarly, showing that the petitioner paid wages in excess of the proffered wage is insufficient.

In *K.C.P. Food Co., Inc. v. Sava*, 623 F. Supp. at 1084, the court held that the Immigration and Naturalization Service, now USCIS, had properly relied on the petitioner's net income figure, as stated on the petitioner's corporate income tax returns, rather than the petitioner's gross income. The court specifically rejected the argument that USCIS should have considered income before expenses were paid rather than net income.

With respect to depreciation, the court in *River Street Donuts* noted:

> The AAO recognized that a depreciation deduction is a systematic allocation of the cost of a tangible long-term asset and does not represent a specific cash expenditure during the year claimed. Furthermore, the AAO indicated that the allocation of the depreciation of a long-term asset could be spread out over the years or concentrated into a few depending on the petitioner's choice of accounting and depreciation methods. Nonetheless, the AAO explained that depreciation represents an actual cost of doing business, which could represent either the diminution in value of buildings and equipment or the accumulation of funds necessary to replace perishable equipment and buildings. Accordingly, the AAO stressed that even though amounts deducted for depreciation do not represent current use of cash, neither does it represent amounts available to pay wages.

> We find that the AAO has a rational explanation for its policy of not adding depreciation back to net income. Namely, that the amount spent on a long term tangible asset is a "real" expense.

*River Street Donuts* at 116.  "[USCIS] and judicial precedent support the use of tax returns and the *net income figures* in determining petitioner's ability to pay.  Plaintiffs' argument that these figures should be revised by the court by adding back depreciation is without support." *Chi-Feng Chang* at 537 (emphasis added).

The record before the director closed on March 31, 2009 with the receipt by the director of the petitioner's submissions in response to the director's request for evidence.  As of that date, the petitioner's 2008 federal income tax return was not yet due.  Therefore, the petitioner's income tax return for 2007 is the most recent return available.  The petitioner's tax returns demonstrate its net income for tax years 2001, 2002, 2003, 2005 and 2006, as shown in the table below.

- In 2001, the Form 1120S stated net income[4] of $80,147.

---

[4] Where an S corporation's income is exclusively from a trade or business, USCIS considers net income to be the figure for ordinary income, shown on line 21 of page one of the petitioner's IRS Form 1120S.  However, where an S corporation has income, credits, deductions or other adjustments

████████

Page 6

- In 2002, the Form 1120S stated net income of $12,479.
- In 2003, the Form 1120S stated net income of $36,264.
- In 2005, the Form 1120S stated net income of -$40,318.
- In 2006, the Form 1120S stated net income of -$81,660.

Therefore, for the years 2005 and 2006, the petitioner did not have sufficient net income to pay the difference between the beneficiary's actual wages and the proffered wage.[5] The petitioner did have sufficient net income in tax years 2001, 2002, and 2003 to pay the difference between the beneficiary's actual wages and the proffered wage.[6]

As an alternate means of determining the petitioner's ability to pay the proffered wage, USCIS may review the petitioner's net current assets. Net current assets are the difference between the petitioner's current assets and current liabilities.[7] A corporation's year-end current assets are shown on Schedule L, lines 1 through 6. Its year-end current liabilities are shown on lines 16 through 18. If the total of a corporation's end-of-year net current assets and the wages paid to the beneficiary (if any) are equal to or greater than the proffered wage, the petitioner is expected to be able to pay the proffered wage using those net current assets. The petitioner's tax returns demonstrate its end-of-year net current assets for 2005 and 2006, as shown in the table below.

- In 2005, the Form 1120S stated net current assets of $187,236
- In 2006, the Form 1120S stated net current assets of $218,115.

Therefore, for the years 2005 and 2006, the petitioner did have sufficient net current assets to pay the difference between the beneficiary's actual wages and the proffered wage.

---

from sources other than a trade or business, they are reported on Schedule K. If the Schedule K has relevant entries for additional income, credits, deductions or other adjustments, net income is found on line 23 (1997-2003) line 17e (2004-2005) line 18 (2006) of Schedule K. *See* Instructions for Form 1120S, 2006, at http://www.irs.gov/pub/irs-pdf/i1120s.pdf (indicating that Schedule K is a summary schedule of all shareholder's shares of the corporation's income, deductions, credits, etc.). Because the petitioner had additional deductions for tax years 2001 to 2003, the petitioner's net income is found on Schedule K of these years. For tax years 2005 and 2006, the petitioner's net income is shown on line 21, page one, of its tax returns.

[5]  As stated previously, the differences are $10,190.04 in 2005 and $29,380.35 in 2006.

[6]  As stated previously the differences are $11,793.12 in 2001; $3,690.95 in 2002; and $738.10 in 2003.

[7]According to *Barron's Dictionary of Accounting Terms* 117 (3rd ed. 2000), "current assets" consist of items having (in most cases) a life of one year or less, such as cash, marketable securities, inventory and prepaid expenses. "Current liabilities" are obligations payable (in most cases) within one year, such accounts payable, short-term notes payable, and accrued expenses (such as taxes and salaries). *Id.* at 118.

████████

Page 7

Thus, from the date the Form ETA 750 was accepted for processing by the DOL, the petitioner has established that it had the continuing ability to pay the beneficiary the proffered wage as of the priority date through an examination of wages paid to the beneficiary, or its net income or net current assets.[8]

The burden of proof in these proceedings rests solely with the petitioner. Section 291 of the Act, 8 U.S.C. § 1361. The petitioner has met that burden.

**ORDER**: The appeal is sustained. The petition is approved.

---

[8] USCIS computer records indicate that the petitioner filed an additional I-140 petition on June 26, 2006 that was subsequently approved on April 18, 2007, prior to the submission of the instant petition. The record does not reflect that the second beneficiary adjusted to permanent residency. The petitioner has to establish its ability to pay the wages of both beneficiaries as of 2006 onward. The AAO notes that the petitioner's net current assets for tax years 2006 and 2007 are $187,236 and $218,115 respectively. These sums would be sufficient to pay for the entire proffered wages of both beneficiaries, if the wages are similar.

JS 44  (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Online Marketing Solutions, Inc. and Xuefeng Wang | Janet Napolitano, Secretary, US Department of Homeland Security; et al |

| (b)  County of Residence of First Listed Plaintiff  Middlesex | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |

| (c)  Attorneys *(Firm Name, Address, and Telephone Number)*<br>Vard R. Johnson, Suite 601, 185 Devonshire Street, Boston, Ma. 02110<br>617-557-1711 | Attorneys *(If Known)*<br>U.S. Attorney |
|---|---|

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1  U.S. Government
      Plaintiff

❏ 3  Federal Question
      *(U.S. Government Not a Party)*

☒ 2  U.S. Government
      Defendant

❏ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 400 State Reapportionment |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ | | | ❏ 410 Antitrust |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ❏ 430 Banks and Banking |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | Product Liability | | ❏ 820 Copyrights | ❏ 450 Commerce |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 830 Patent | ❏ 460 Deportation |
| ❏ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Mgmt. Relations | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Med. Malpractice | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | | | ❏ 790 Other Labor Litigation | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| | | | ❏ 791 Empl. Ret. Inc. Security Act | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | ❏ 510 Motions to Vacate Sentence | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | **Habeas Corpus:** | | ❏ 871 IRS—Third Party 26 USC 7609 | ☒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 530 General | | | |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 535 Death Penalty | **IMMIGRATION** | | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 540 Mandamus & Other | ❏ 462 Naturalization Application | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | ❏ 550 Civil Rights | ❏ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ❏ 448 Education | ❏ 555 Prison Condition | ❏ 465 Other Immigration Actions | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
      Proceeding

❏ 2  Removed from
      State Court

❏ 3  Remanded from
      Appellate Court

❏ 4  Reinstated or
      Reopened

❏ 5  Transferred from
      another district
      *(specify)*

❏ 6  Multidistrict
      Litigation

| VI.  CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:<br>5 U.S.C. 701, et. seq. and 28 USC 1331<br>Brief description of cause:<br>Review of final agency decisions in connection with visa petition. |
|---|---|

| VII. REQUESTED IN COMPLAINT: | ❏ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND: ❏ Yes  ☒ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):*  JUDGE | DOCKET NUMBER |
|---|---|---|

| DATE<br>*Nov. 30, 2012* | SIGNATURE OF ATTORNEY OF RECORD<br>*Vard R. John—* |
|---|---|

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

JS 44 Reverse (Rev. 09/11)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.      (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.      Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.      Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.      Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.      Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.      Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**      Example:      U.S. Civil Statute: 47 USC 553
                    Brief Description: Unauthorized reception of cable service

**VII.      Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.      Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only) Online Marketing Solutions, Inc. v. Janet Napolitano, Secretary, DHS, et.al

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

☐  I.   410, 441, 470, 535, 830*, 891, 893, 895, R.23, REGARDLESS OF NATURE OF SUIT.

☐  II.  110, 130, 140, 160, 190, 196, 230, 240, 290,320,362, 370, 371, 380, 430, 440, 442, 443, 445, 446, 448, 710, 720, 740, 790, 820*, 840*,  850, 870,  871.

☑  III.  120, 150, 151, 152, 153, 195, 210, 220, 245, 310, 315,  330, 340, 345, 350, 355, 360, 365, 367, 368, 375, 385, 400, 422, 423, 450, 460, 462, 463, 465, 480, 490, 510, 530, 540, 550, 555,  625, 690, 751, 791, 861-865,  890, 896, 899, 950.

*Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3.  Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES ☐      NO ☑

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

YES ☐      NO ☑

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES ☐      NO ☐

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES ☐      NO ☑

7.  Do all of the parties  in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? -  (See Local Rule 40.1(d)).

YES ☑      NO ☐

A.  If yes, in which division do all of the non-governmental parties reside?

Eastern Division ☑        Central Division ☐        Western Division ☐

B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division ☐        Central Division ☐        Western Division ☐

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

YES ☐      NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME Vard R. Johnson

ADDRESS Suite 601, 185 Devonshire Street, Boston, Ma. 02110

TELEPHONE NO. 617-557-1711

(CategoryForm12-2011.wpd  - 12/2011)